1  Julian Burns King (Bar No. 298617)
   julian@kingsiegel.com
2  Robert J. King (Bar No. 302545)
   robert@kingsiegel.com
3  **KING & SIEGEL LLP**
4  601 University Avenue, Ste. 275
   Sacramento, California 95825
5  tel:  (213) 465-4802
6  fax:  (213) 465-4803

7  Attorneys for Plaintiff
   Theresa O'Hollaren

8

9              **UNITED STATES DISTRICT COURT**

10            **EASTERN DISTRICT OF CALIFORNIA**

11
   **Theresa O'Hollaren**, an individual,        CASE NO.
12
                 Plaintiff,                       **COMPLAINT FOR:**
13
            vs.                                   1) **Gender Discrimination in**
14                                                   **Violation of FEHA;**
   **West-Com Nurse Call Systems,**              2) **Gender Harassment in**
15 **Inc.**, a California corporation; **West-**     **Violation of FEHA;**
   **Com & TV, Inc.**, a California              3) **Failure to Prevent**
16 corporation; **Jonathan Peters**, an             **Discrimination, Harassment,**
   individual; **Marc Peters**, an                  **and/or Retaliation in Violation**
17 individual; and **Does 1-10**, inclusive,        **of FEHA;**
                                                  4) **Defamation;**
18               Defendants.                      5) **Retaliation in Violation of**
                                                     **Labor Code § 1102.5;**
19                                                6) **Wrongful Termination in**
                                                     **Violation of Public Policy**
20                                                   (***Tameny***)
21

22

23

24

25

26

27

28

1.      Plaintiff Theresa O'Hollaren, by and through her attorneys, hereby complains and alleges as follows:

## PARTIES

1.      Plaintiff **Theresa O'Hollaren** ("Plaintiff") was a long-time employee of Defendants. From August 1, 2018 until her wrongful termination in 2023, she was employed as a Chief Nursing Officer for West-Com Nurse Call Systems, Inc. She is a 62-year-old woman. Ms. O'Halloren lives and resides in the state of Oregon.

2.      Defendant **West-Com Nurse Call Systems, Inc.** ("**West-Com**") is a California corporation conducting business in the County of Solano, with its principal business location at 2200 Cordelia Road, Fairfield, California 94534. At all times relevant to the complaint, West-Com conducted business within California. West-Com is "dedicated to developing innovative, sustainable solutions that improve communications, streamline workflows, and contribute to the reduction or elimination of preventable medical errors and hospital acquired conditions." West-Com manufactures products that are distributed by approximately 50 authorized dealers, including defendant West-Com TV. Although Ms. O'Hollaren believed West-Com to be her direct employer, she learned at some point that she was being paid by West-Com & Tv, Inc. Until approximately 2022, West-Com and West-Com TV shared offices in California and their operations were intermingled, as evidenced by the entity on Ms. O'Hollaren's paystubs.

3.      Defendant **West-Com & Tv, Inc.** ("**West-Com TV**") is a California corporation conducting business in the County of Solano, with its principal business location at 2200 Cordelia Road, Fairfield, California 94534. At all times relevant to the complaint, Universal conducted business within California and affiliated with Defendant West-Com Nurse Call Systems, Inc. West-Com TV distributes and installs equipment obtained from defendant West-Com. Plaintiff was paid by West-Com TV for approximately three years of her tenure with defendant entities (West-Com TV and West-Com are referred to as the "West-Com Entities").

4.     Defendant **Jonathan Peters** is an individual who at all times relevant herein, upon information and belief, was and is a resident of the County of Solano, California and a principal owner of West-Com and West-Com TV.

5.     Defendant **Marc Peters** is an individual who at all times relevant herein, upon information and belief, was and is a resident of the County of Solano, California and a principal owner of West-Com.

6.     Plaintiff is not currently aware of the names and true identities of defendants Does 1-10. Plaintiff reserves the right to amend this complaint to allege their true names and capacities when this information is available. Each Doe defendant is responsible for the damages alleged pursuant to each of the causes of action asserted, either through its own conduct, or vicariously through the conduct of others. All further references in this complaint to any of the named Defendants includes the fictitiously named defendants.

7.     Except as otherwise noted herein, Defendants participated in the acts alleged herein and/or were the agents, servants, employees, or representatives of the other Defendants. At all times relevant to this complaint, Defendants were acting within the course, scope, and authority of their agency and employment such that the acts of one defendant are legally attributable to the other Defendants. Defendants, in all respects, acted as employers and/or joint employers of Plaintiff and Aggrieved Employees in that each of them exercised control over the wages, hours, and/or working conditions of Defendants' hourly non-exempt employees.

## VENUE AND JURISDICTION

8.     This Court has jurisdiction over all causes of action in this complaint pursuant to 28 U.S.C. 1332 because this action involves citizens of different states and the matter in controversy exceeds $75,000.

9.     This Court has personal jurisdiction over Defendants because Defendants conduct business in Solano County and State of California through their acts, and by their violation of the California Fair Employment and Housing Act, the

California Labor Code, and California common law, and this action arises out of those acts.

10.    Venue is proper in Eastern District of California because Defendants do business in the District and because a substantial part of the events giving rise to Plaintiff's claims occurred in the District.

## FACTUAL ALLEGATIONS

### Defendants Hire Ms. O'Hollaren

11.    Ms. O'Hollaren worked as a critical care RN and has since forged a path advancing healthcare-related products relating to patient experience, nurse communications, and hospital workflow technology. After nearly 10 years as an ICU nurse, she transitioned to medical sales, leveraging her knowledge of the field to provide exceptional service to those who use medical products—medical professionals and patients. She achieved exceptional results in numerous prior roles including serving nearly 20 years with a medical supply company, five years at Johnson & Johnson, and over 6 years at LINET Americas.

12.    Larry Peters, the Founder and then-CEO of the West-Com Entities, recruited Ms. O'Hollaren to serve as West-Com Nurse Call Systems' Chief Nursing Officer, citing her extensive industry experience and the numerous large accounts she had served in her prior roles. Ms. O'Hollaren was then in her mid-50s and told Peters that she did not want to leave her current employment unless she could work at West-Com until retirement. Peters agreed that if Ms. O'Hollaren came to West-Com, it would be her "last move."

13.    When Ms. O'Hollaren joined West-Com, Peters announced her hire with an email to the team citing her "*myriad experience and successes*," citing but not her work as a VP of Strategic Accounts at Linet, her experience as an Account Executive at Johnson & Johnson, her on-the-ground nursing experience as an RN at Hartford Hospital and Middlesex Memorial Hospital, and the numerous publications and industry presentations to her name.

14.    Although Ms. O'Hollaren was initially promised commission, in June 2019, Peters proposed changing her compensation structure because she was involved in "*pretty much every deal*" and if she received commissions on everything, "*we [would] be broke.*" Ms. O'Hollaren gamely agreed to this proposed change, even though it cost her significant money, due to her love of the job and commitment to the company.

15.    Ms. O'Hollaren excelled and forged strong relationships with Defendants' customers. During the early days of COVID, when most of the sales team declined to travel, Ms. O'Hollaren continued to visit hospitals to place Defendants' products and forge relationships with hospital systems. Over her first three years at the company, she grew revenues by 30% and closed contracts with several major hospital systems and a State agency. She also partnered with a major telehealth service to add value to the company's core products.

### Marc Peters Always Resented Ms. O'Hollaren Because She Was a Knowledgeable, Older Woman

16.    One of Ms. O'Hollaren's explicit job duties was mentoring Larry's son, Marc.

17.    Despite her successes, Marc Peters resented Ms. O'Hollaren's wealth of knowledge, repeatedly demonstrating that he did not respect her experience or knowledge (or that of other experienced women at the Company). For instance, he referred to women at the West-Com Entities as "*the peanut gallery,*" passed their ideas off as his own, complained that their salaries were too high, and even referred to them as "*bitches*" or a "*bitch.*" He did not make the same comments about male employees.

18.    Similarly, Marc Peters regularly took credit for Ms. O'Hollaren's ideas, generously presented to him in the spirit of mentorship, and passed them off as his own. Moreover, when Ms. O'Hollaren brought up ideas in meetings, Marc Peters would belittle and dismiss them. Ms. O'Hollaren's colleagues observed that Marc

King & Siegel ‖LLP

Peters treated her differently than male executives.

19.    While Larry Peters was at West-Com, Ms. O'Hollaren took Marc Peters' dismissive, harassing, and discriminatory attitude in stride, as he had little power to impact her professional trajectory and she was fully committed to maintaining her working relationships. Ms. O'Hollaren helped Marc Peters develop expertise in the industry and re-entrench himself in the company's leadership. (Previously, Larry Peters had fired Marc due to his misconduct.)

### Larry Peters Passes Away and Marc Peters, Now CEO, Engages in a Pattern of Threatening, Harassing Conduct

20.    On or around December 12, 2020, Larry Peters unexpectedly passed away, and ownership of the West-Com Entities passed to a trust. One of Larry's sons, Jonathan Peters, was appointed sole Trustee. The Peters' adult children then embarked on an internecine battle to disinherit certain beneficiaries, including each other.

21.    Following Larry's death, the West-Com entities underwent a series of leadership shake-ups, which resulted in Marc Peters becoming CEO of West-Com. West-Com's Board of Directors was comprised of Marc Peters, Jonathan Peters, and Paul Langstroth.

22.    In or around August 2021, Marc yelled in rage at Ms. O'Hollaren when she disagreed with him in a meeting. Following this meeting, others in the company contacted Ms. O'Hollaren to express their concerns about his conduct and his hostile treatment of women more generally.

23.    On or around December 9, 2021, the West-Com Entities' senior leadership teams were attending a Trans-Siberian Orchestra concert when Marc Peters, visibly inebriated, began shouting obscenities at another concertgoer, resulting in the police being called twice. When Ms. O'Hollaren tried to prevent Marc from making a public scene and harming West-Com's reputation, he texted her, "*I like a good fight*." Ultimately, the police removed Marc from the concert.

24.     Several weeks later, Marc learned that Ms. O'Hollaren was earning more than he was. He was incensed. He threatened to cut her salary by more than 30% despite her responsibility for a majority of the Company's revenue—and refused to pay her a bonus for her hard work in 2020. He ranted to others about Ms. O'Hollaren's lack of contributions and diminished her work on nearly every account that generated revenue.

25.     Following this meeting, Marc escalated his belittling and hostile behavior towards Ms. O'Hollaren in meetings.

26.     In June 2022, Marc tried to enlist Ms. O'Hollaren in his legal battle over the trust. He asked Ms. O'Hollaren to agree with him that his brother Jonathan was so "mentally ill" that he was incompetent to serve as Trustee. When she refused to offer unwarranted medical opinions to seize trust assets from his siblings and other beneficiaries, Marc again became enraged with her.

27.     A few weeks later, Ms. O'Hollaren learned from Jonathan Peters that Marc was trying to fire her, but the Board refused to approve the termination. Ms. O'Hollaren was seen as so essential to the company that Marc Peters was fired for his advocacy for her termination.

**Marc Peters is Fired and is Escorted Out by Male Employees**

28.     When Marc was fired, he became violent and threw a metal water bottle at the head of the female CFO, Dania Atannasova-Een, who replaced him on the Board. The police were called to escort him out of the building; however, Marc ultimately agreed to leave without a police escort.

29.     Marc Peters blamed Ms. O'Hollaren for his termination. Shortly after he was fired, Marc Peters wrote a LinkedIn post about how a female sales executive at a company he used to work for where a woman in a senior leadership role had frequently taken "credit for other people's success." Marc Peters had only worked for the West-Com Entities and Ms. O'Hollaren was the only female sales executive in a sales role.  Other West-Com Entity employees understood this post to be about Ms.

Complaint

O'Hollaren. This post was false and defamatory and violated Marc Peters's non-disparagement agreement with West-Com. Ms. O'Hollaren complained to Paul Langsroth, the acting CEO, about this post.

30.    Free to work without Marc Peters's interference and harassment, Ms. O'Hollaren was once again recognized for her excellent work. She was given the "GLUE Award" for 2022, invited to join the President's Circle, a trip to Mexico, and received a significant bonus.

## Marc Peters is Re-Hired and Immediately Fires Ms. O'Hollaren, Defaming Her on Her Way Out

31.    In February, Jonathan Peters suffered from a sudden health issue and was unable to work. As a result, Sean Peters became the trustee of the Peters trust and reappointed Marc to West-Com's Board.

32.    On June 9, 2023, Marc called a mandatory meeting for the entire company. During the meeting, he announced to everyone that there had been "*borderline illegal activity*" at the company, that Atannasova-Een would be placed on leave, and that "*others were involved.*"

33.    On June 13, Ms. O'Hollaren responded to a request for information from the attorney for the trust related to Marc Peters's ongoing litigation contesting the trust.

34.    On June 14, Marc Peters announced that Dania Atannasova-Een, Ms. O'Hollaren, and David Daum had been fired. Closely following his statement that Atannasova-Een was involved in "*borderline illegal activity*" and "*others were involved,*" this announcement suggested to those receiving it that Ms. O'Hollaren and Daum were also responsible for the unspecified "*borderline illegal activity.*" This statement was false and defamatory.

35.    Following Defendants' decision to fire Ms. O'Hollaren, others at the company were told that Theresa "*wasn't working,*" "*wasn't doing anything,*" and that her termination was "*performance-based,*" despite her exceptional

King & Siegel ⫴ LLP

1  performance and closing numerous high-value contracts with hospital systems.

2  These statements were also false and defamatory.

### The West-Com Entities Are Rife with Double Standards, Sexism, and Retaliation

36.   Ms. O'Hollaren is not the only victim of gender discrimination at the West-Com Entities. Indeed, the Westcom entities were male-dominated and older, female executives and high-level employees were disparaged and driven out or fired.

37.   For instance, a highly successful account executive for West-Com TV, was terminated shortly after complaining that she was mistreated by Jonathan Peters. Although she had never received any write-ups or disciplinary actions before her complaint, immediately following her complaint, she was repeatedly disciplined on frivolous charges and ultimately fired.

38.   Similarly, Dania Atannasova-Een was terminated because she was a woman in a high position at Defendants, and because she made a significant salary as CFO and was assigned assets in Larry Peters's will and/or trust documents. Marc Peters resented any assets being bequeathed to other family members, friends, or business associates, especially when they were women working at the Westcom entities.

39.   Another older female employee was forced to resign because Marc Peters consistently made diminishing and disparaging statements about her and her work. Similarly, another female employee complained that she was fearful of Marc.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

40.   Ms. O'Hollaren has met all administration exhaustion requirements by obtaining a right-to-sue letter from the California Department of Fair Employment and Housing ("DFEH"). **Exhibit A**.

### FIRST CAUSE OF ACTION

### *Gender Discrimination in Violation of FEHA*

### *Gov. Code §§ 12940, et seq.*

King & Siegel LLP

**(Plaintiff Against The West-Com Entities)**

41.     Plaintiff repeats and incorporates by reference all allegations contained in the preceding paragraphs.

42.     The California Fair Employment and Housing Act provides that it is unlawful for "an employer, because of the . . . sex . . . of any person, to . . . discharge the person from employment, . . . or to discriminate against the person in compensation or in terms, conditions, or privileges of employment." Gov. Code §§ 12940(a).

43.     Defendants are employers in the State of California, within the meaning of the Fair Employment and Housing Act ("FEHA"), Gov't Code § 12926.

44.     At all relevant times herein, Plaintiff was an employee of Defendants within the meaning of Gov't Code § 12926 and performed her essential job duties competently and satisfactorily at all times during her employment.

45.     Defendants discriminated against Ms. O'Hollaren because of her sex in violation of Government Code § 12940(a) by terminating her employment.

46.     Ms. O'Hollaren's sex was the sole or motivating factor in Defendants' decision to take these or other adverse employment actions against her.

47.     As a direct and proximate result of the violation of her rights under the FEHA, Plaintiff has suffered and will continue to suffer general damages in amounts to be proven at trial. Defendants' conduct was a substantial factor in causing those damages.

48.     As a direct and proximate result of Defendants' violation of her rights under the FEHA, Plaintiff has suffered and will continue to suffer financial losses, including a loss of earnings and other employment benefits and job opportunities. Plaintiff is entitled to special damages in amounts to be proven at trial. Defendants' conduct was a substantial factor in causing those damages.

49.     As a further, direct, and proximate result of Defendants' violation of Gov't Code § 12900 *et seq.*, as heretofore described, Plaintiff has been compelled to

retain the services of counsel in an effort to enforce the terms and conditions of her employment relationship with Defendants, and has thereby incurred, and will continue to incur, legal fees and costs, the full nature and extent of which are presently unknown to her. Plaintiff therefore requests that attorneys' fees be awarded pursuant to Gov't Code § 12965.

50.    Plaintiff is informed and believes and based thereon alleges that the outrageous conduct of Defendants described above was done with malice, fraud, and oppression and with conscious disregard for her rights and with the intent, design, and purpose of injuring her. By reasons thereof, Plaintiff is entitled to punitive or exemplary damages from Defendants in a sum according to proof at trial.

### SECOND CAUSE OF ACTION

### *Gender Harassment in Violation of FEHA*

### *Gov. Code §§ 12940, et seq.*

### (Plaintiff Against the West-Com Entities and Marc Peters)

51.    Plaintiff repeats and incorporates by reference all allegations contained in the preceding paragraphs as if fully set forth herein.

52.    At all times relevant to this complaint, Plaintiff was an applicant for employment or an employee of the Company and was covered by FEHA.

53.    The FEHA provides that it is unlawful for employer to harass an employee on the basis of sex or gender. Gov. Code § 12940(j)(1). Harassment consists of "conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives." *Reno v. Baird*, 18 Cal.4th 640 (1998) (citations omitted).

54.    Plaintiff was subjected to a hostile and pervasive atmosphere of harassment based on her gender, including demeaning and belittling comments and hostile and threatening conduct. This harassment was so severe and pervasive that it altered the terms and conditions of Plaintiff's employment and created a hostile and

abusive work environment. A reasonable person in Plaintiff's circumstances would have considered the work environment to be hostile and/or abusive, and Plaintiff considered her work environment to be hostile and/or abusive.

55.     Defendants' actions constituted a violation of FEHA. *See, e.g.*, 29 C.F.R. § 1604.11; FEHA Regulations § 7287.6(b).

56.     As a proximate result Defendants' conduct, Plaintiff has suffered special damages in the form of lost earnings, benefits, and/or out-of-pocket expenses in an amount subject to proof at trial. As further direct and proximate results of Defendants' conduct, Plaintiff continues to suffer damages in the form of lost future earnings, benefits, and/or other prospective damages in an amount to be proven at trial.

57.     Defendants' conduct has further caused Plaintiff to lose financial stability, peace of mind, and future security, and has caused her severe embarrassment, humiliation, and mental and emotional distress and discomfort in an amount not fully ascertained but subject to proof at trial.

58.     Because of the conduct alleged herein, Plaintiff hired attorneys to prosecute her claims under FEHA. Accordingly, Plaintiff is entitled to recover attorneys' fees and costs pursuant to Government Code § 12965(b), in addition to other damages provided by law.

59.     Moreover, Defendants' conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard for Plaintiff's rights, entitling her to punitive damages.

### THIRD CAUSE OF ACTION

***Failure to Prevent Discrimination, Harassment, and***

***Retaliation in Violation of FEHA***

***Gov. Code § 12940, et seq.***

**(Plaintiff Against Defendants West-Com Entities)**

60.     Plaintiff repeats and incorporates by reference all allegations contained

in the preceding paragraphs.

61. Section 12940(k) of the FEHA provides for liability against an employer if it "fail[s] to take all reasonable steps necessary to prevent discrimination and harassment from occurring."

62. Defendants, through their managing agents and supervisors, should have but did not take all reasonable steps to prevent discrimination and/or retaliation.

63. As a direct and proximate result of violating her rights under the FEHA, Plaintiff has suffered and will continue to suffer general damages in amounts to be proven at trial. Defendants' conduct was a substantial factor in causing those damages.

64. As a direct and proximate result of Defendants' violation of her rights under the FEHA, Plaintiff has suffered and will continue to suffer financial losses, including a loss of earnings and other employment benefits and job opportunities. Plaintiff is thereby entitled to special damages in amounts to be proven at trial. Defendants' conduct was a substantial factor in causing those damages.

65. As a further, direct, and proximate result of Defendants' violation of Gov't Code § 12900 *et seq.*, as heretofore described, Plaintiff has been compelled to retain the services of counsel in an effort to enforce the terms and conditions of her employment relationship with Defendants, and has thereby incurred, and will continue to incur, legal fees and costs, the full nature and extent of which are presently unknown to her. Plaintiff requests that attorneys' fees be awarded under Gov't Code § 12965.

66. Plaintiff is informed and believes and based thereon alleges that the outrageous conduct of Defendants described above was done with malice, fraud, and oppression and with conscious disregard for her rights and with the intent, design, and purpose of injuring her. By reasons thereof, Plaintiff is entitled to punitive or exemplary damages from Defendants in a sum according to proof at trial.

## FOURTH CAUSE OF ACTION

### *Defamation*

### (Plaintiff Against Defendants)

67.    Plaintiff repeats and incorporates by reference all allegations contained in the preceding paragraphs.

68.    California law prohibits defamation, which consists of both libel and slander. See Cal. Civ. Code §§ 44, 45a, and 46. Defamation in employment normally arises when a Defendant makes a false statement internally regarding an employee's poor performance or incompetency. *See Kelly v. General Telephone Co.*, 136 Cal. App. 3d 278 (1982).

69.    Defendants violated California Civil Code §§ 44, 45a, and 46 when Defendant's supervisors made false and unprivileged statements implying that Ms. O'Hollaren was engaged in "borderline illegal activity." Defendants have also falsely stated that Ms. O'Hollaren was fired because of poor performance and unprofessional treatment of employees.   These false statements injured Ms. O'Hollaren's reputation.

70.    Defendants' conduct has caused her severe embarrassment, humiliation, and mental and emotional distress and discomfort in an amount not fully ascertained but subject to proof at trial.

71.    Moreover, Defendants' conduct has been intentional, deliberate, willful, malicious, reckless, and callous disregard for Ms. O'Hollaren's rights, entitling her to punitive damages.

## FIFTH CAUSE OF ACTION

### *Retaliation in Violation of Labor Code § 1102.5*

### (Plaintiff Against the West-Com Entities)

72.    Plaintiff repeats and incorporates by reference all allegations contained in the preceding paragraphs as if fully set forth herein.

73.    Plaintiff repeats and incorporates by reference all allegations contained

King & Siegel ‖ LLP

in the preceding paragraphs as if fully set forth herein.

74. Labor Code section 1102.5(b) makes it unlawful for an employer to retaliate against an employee because the employer believes that the employee disclosed or will disclose information "to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discovery, or correct the violation or noncompliance […] if the employee has reasonable cause to believe that the information discloses [a violation of law]."

75. Labor Code section 1102.5 also makes it unlawful for an employer to "retaliate against an employee for refusing to participate in an activity that would result in a [violation of law]." Labor Code § 1102.5(c).

76. As alleged above, Plaintiff declined to offer false testimony to support Marc Peters's challenge to the Peters trust. Marc Peters also anticipated that she would offer truthful testimony in support of trust beneficiaries. Peters retaliatorily terminated Plaintiff to limit her ability to offer truthful testimony relating to the West-Com Entities in the trust lawsuit.

77. Plaintiff is entitled to lost wages, back pay, front pay, and reasonable attorney's fees. Moreover, Defendants are subject to a civil penalty of $10,000 pursuant to Labor Code § 1102.5.

### SIXTH CAUSE OF ACTION

### *Wrongful Termination in Violation of Public Policy*

### **(Plaintiff Against West-Com Entities)**

78. Plaintiff repeats and incorporates by reference all allegations contained in the preceding paragraphs as if fully set forth herein.

79. "[W]hen an employer's discharge of an employee violates fundamental principles of public policy, the discharged employee may maintain a tort action and recover damages traditionally available in such actions." *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 170.

80.   As set forth herein, Defendants wrongfully terminated Plaintiff's employment in violation of various fundamental public policies of the United States and the State of California. These fundamental public policies are embodied in the FEHA and the Labor Code, among others. Moreover, Defendants wrongfully terminated Plaintiff because she participated in the Trust's defense of the litigation brought by Marc Peters and declined to agree to lie about Jonathan Peters' mental state in support of Marc Peters' litigation.

81.   As a direct and proximate result of Defendants' conduct, Plaintiff has suffered special damages in the form of lost earnings, benefits, and/or out-of-pocket expenses in an amount subject to proof at trial. As further direct and proximate results of Defendants' conduct, Plaintiff continues to suffer damages in the form of lost future earnings, benefits, and/or other prospective damages in an amount to be proven at trial.

82.   Defendants' conduct has further caused Plaintiff to lose financial stability, peace of mind, and future security. Defendants' conduct has caused her severe embarrassment, humiliation, and mental and emotional distress and discomfort in an amount not fully ascertained but subject to proof at trial.

83.   Moreover, Defendants' conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard for Plaintiff's rights, entitling her to punitive damages.

### DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38 Plaintiff demands a trial by jury on all issues so triable.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays judgment as follows:

A.    For actual and liquidated damages according to proof at trial;

B.    For statutory and civil penalties and special damages, according to proof at trial;

C.    For punitive and exemplary damages according to proof;

D.    For temporary and permanent injunctive relief;

E.    For pre- and post-judgment interest on monetary damages;

F.    For reasonable attorneys' fees and costs and expert fees and costs as allowed by law; and

G.    For such other relief as this Court deems just and proper.

Dated:        April 23, 2024                Respectfully submitted,

**KING & SIEGEL LLP**

By: _Robert J. King_____
Julian Burns King
Robert J. King
Attorneys for Plaintiff

16

Complaint

# Exhibit A

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

**Civil Rights Department**

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 (voice) | 800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

April 23, 2024


Robert King
724 S. Spring Street
Los Angeles, CA 90013

RE:     **Notice to Complainant's Attorney**
        CRD Matter Number: 202404-24465623
        Right to Sue: O'Hollaren / West-Com Nurse Call Systems, Inc. et al.

Dear Robert King:

Attached is a copy of your complaint of discrimination filed with the Civil Rights
Department (CRD) pursuant to the California Fair Employment and Housing Act,
Government Code section 12900 et seq. Also attached is a copy of your Notice of Case
Closure and Right to Sue.

**Pursuant to Government Code section 12962, CRD will not serve these
documents on the employer.** You must serve the complaint separately, to all named
respondents. Please refer to the attached Notice of Case Closure and Right to Sue for
information regarding filing a private lawsuit in the State of California. A courtesy "Notice
of Filing of Discrimination Complaint" is attached for your convenience.

Be advised that the CRD does not review or edit the complaint form to ensure that it
meets procedural or statutory requirements.

Sincerely,

Civil Rights Department



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

Civil Rights Department

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 (voice) | 800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

April 23, 2024

RE:    **Notice of Filing of Discrimination Complaint**
CRD Matter Number: 202404-24465623
Right to Sue: O'Hollaren / West-Com Nurse Call Systems, Inc. et al.

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the Civil
Rights Department (CRD) in accordance with Government Code section 12960. This
constitutes service of the complaint pursuant to Government Code section 12962. The
complainant has requested an authorization to file a lawsuit. A copy of the Notice of
Case Closure and Right to Sue is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their
contact information.

No response to CRD is requested or required.

Sincerely,

Civil Rights Department



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                                   GAVIN NEWSOM, GOVERNOR

**Civil Rights Department**                                                                            KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 (voice) | 800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

April 23, 2024

Theresa O'Hollaren

,

RE:     **Notice of Case Closure and Right to Sue**
        CRD Matter Number: 202404-24465623
        Right to Sue: O'Hollaren / West-Com Nurse Call Systems, Inc. et al.

Dear Theresa O'Hollaren:

This letter informs you that the above-referenced complaint filed with the Civil Rights
Department (CRD) has been closed effective April 23, 2024 because an immediate
Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section
12965, subdivision (b), a civil action may be brought under the provisions of the Fair
Employment and Housing Act against the person, employer, labor organization or
employment agency named in the above-referenced complaint. The civil action must be
filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal
Employment Opportunity Commission (EEOC) to file a complaint within 30 days
of receipt of this CRD Notice of Case Closure or within 300 days of the alleged
discriminatory act, whichever is earlier.

Sincerely,


Civil Rights Department

CRD - ENF 80 RS (Revised 02/23)

1

## COMPLAINT OF EMPLOYMENT DISCRIMINATION
## BEFORE THE STATE OF CALIFORNIA
### Civil Rights Department
### Under the California Fair Employment and Housing Act
### (Gov. Code, § 12900 et seq.)

2

3

4

**In the Matter of the Complaint of**

5

Theresa O'Hollaren                                                    CRD No. 202404-24465623

6

                                        Complainant,

7

vs.

8

West-Com Nurse Call Systems, Inc.

,

9

West-Com & TV, Inc.

10

,

11

Jonathan Peters

,

12

Marc Peters

13

,

14

                                        Respondents

15

_____

16

17

**1.** Respondent **West-Com Nurse Call Systems, Inc.** is an **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

18

**2**.Complainant is naming **West-Com & TV, Inc.** business as Co-Respondent(s).
Complainant is naming **Jonathan Peters** individual as Co-Respondent(s).

19

Complainant is naming **Marc Peters** individual as Co-Respondent(s).

20

**3**. Complainant **Theresa O'Hollaren**, resides in the City of **,** State of **.**

21

22

**4.** Complainant alleges that on or about **April 23, 2024**, respondent took the following adverse actions:

23

**Complainant was harassed** because of complainant's gender identity or expression.

24

25

26

-1-

27

Date Filed: April 23, 2024

28

CRD-ENF 80 RS (Revised 12/22)

1  **Complainant was discriminated against** because of complainant's gender identity or
2  expression and as a result of the discrimination was terminated, denied any employment
   benefit or privilege.

3  **Additional Complaint Details:**

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26
                                        -2-
                         *Complaint – CRD No. 202404-24465623*
27
   Date Filed: April 23, 2024
28
                                                              CRD-ENF 80 RS (Revised 12/22)

VERIFICATION

I, **Robert King**, am the **Attorney** in the above-entitled complaint.  I have read the foregoing complaint and know the contents thereof.  The matters alleged are based on information and belief, which I believe to be true.

On April 23, 2024, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**Sacramento California**

-3-

*Complaint – CRD No. 202404-24465623*

Date Filed: April 23, 2024

CRD-ENF 80 RS (Revised 12/22)